## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

STATE OF OHIO, *ex rel.*
MICHAEL DeWINE
OHIO ATTORNEY GENERAL,

      Plaintiff,

-v-

      Case No.: 2:14-cv-1843
      JUDGE SMITH
      Magistrate Judge Kemp

SUPERIOR FIBERS, INC., *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiff, the State of Ohio, initiated this case against Defendants Superior Fibers, Inc., William Miller, Superior Bremen Filtration, LLC, and Reichhold, Inc. and immediately moved for a preliminary injunction to "enjoin Defendants . . . to implement an Interim Action to address a plume of ground water contamination caused by the disposal of waste solvents at the manufacturing facility located at 499 North Broad Street, Bremen, Fairfield County, Ohio." (*See* Attachment A to Pl.'s Mot., Doc. 2). Plaintiff alleges that Defendants have violated the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), as amended 42 U.S.C. §§ 9601 *et seq.*, and Ohio's surface water and hazardous waste laws under Ohio Revised Code §§ 6111.07(B), 3734.10, 3734.13(C), 3734.20(B), 3767.02-3767.06. Plaintiff's Motion is fully briefed and ripe for review. For the reasons that follow, Plaintiff's Motion for Preliminary Injunction is **GRANTED IN PART AND DENIED IN PART**.

I. **BACKGROUND**

The following facts are set forth for the limited purpose of addressing the immediate motion before the Court.  It should be noted that any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief are not binding at a trial on the merits.  *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

**A.    The Parties**

This matter involves the contamination of ground water caused by the disposal of waste solvents at the manufacturing facility located at 499 North Broad Street, Bremen, Fairfield County, Ohio (hereinafter "manufacturing facility" or "site").  This manufacturing facility has had several owners over the years.

Defendant Reichhold, Inc. was the owner and operator of the manufacturing facility from around February 20, 1964 until May 11, 1984.  Defendant Reichhold used trichloroethylene ("TCE") as a solvent in it manufacturing process and it disposed of or discharged TCE during its operation of the manufacturing facility.  On September 30, 2014, Defendant Reichhold filed a Chapter 11 Voluntary Petition in the Bankruptcy Court for the District of Delaware, Case No. 14-12237-MFW.[1]  (Compl. at ¶¶ 11-13, 17-20, Doc. 1).

Defendant Superior Fibers, Inc. was the owner and operator of the manufacturing facility from on or about May 11, 1984 until October 11, 2006.  Defendant Superior Fibers manufactured fiberglass media at the manufacturing facility.  Superior Fibers also used TCE as a

---

[1] The State of Ohio's commencement and continuation of this action against Defendant Reichhold is exempted from the automatic stay provision of the United States Bankruptcy Code pursuant to 11 U.S.C. § 362(b)(4).

solvent in its manufacturing process and disposed of the solvent during the time it operated the facility. Defendant William Miller is also named as an individual Defendant and is the statutory agent for Superior Fibers. (Compl. at ¶¶ 8-9, 21-24, Doc. 1).

Defendant Superior Bremen Filtration, LLC has been the owner and operator of the manufacturing facility from on or about October 11, 2006 until the present. (Compl. at ¶ 25, Doc. 1). There are no allegations in the Complaint, or otherwise, that Defendant Superior Bremen Filtration has used and/or disposed of any contaminants contributing to the ground water contamination.

**B.      History of the Ground Water Contamination**

Defendant Superior Fibers conducted an investigation of the site pursuant to the rule requirements set forth in the State's Voluntary Action Program ("VAP"), which allows voluntary project cleanup of contaminated properties in accordance with Ohio Administrative Code Chapter 3745-300 without direct oversight by the Ohio EPA. On February 19, 2003, Defendant Superior Fibers, through its certified professional, submitted a no further action letter[2] to Ohio EPA.

Here, the no further action letter stated that the investigation at the site was in compliance with VAP applicable standards. A covenant not to sue request, submitted with the letter, was granted by the Director of the Ohio EPA on March 22, 2005. The covenant not to sue was conditioned on the performance of an operation and maintenance plan, which included periodic

---

[2] These letters are issued by a certified professional under affidavit certifying that there is either no information indicating there has been a release of hazardous substances at the property or that there has been a release of hazardous substances at the property and that applicable standards were not exceeded or have been or will be achieved in accordance with Ohio Revised Code Chapter 3746 and the rules adopted it. *See* Ohio Adm. Code § 3745-300-01(A)(84).

monitoring of ground water monitoring wells and a contingent remedy to be implemented within forty-five (45) days if chemicals of concern were detected in ground water monitoring wells at the property boundary of the manufacturing facility.

In February and March 2006, ground water samples collected by the Ohio EPA showed that the ground water contamination was greater than previously revealed by sampling results submitted under the VAP and that the contamination had spread. This sampling detected TCE and its breakdown compounds at the property boundary of the manufacturing facility, and indicated the presence of ground water contamination beyond the manufacturing facility property boundary. On December 13, 2006, Ohio EPA sent Defendants William R. Miller and Superior Fibers a Notice of Failure to Comply with VAP Applicable Standards and a Proposed Compliance Schedule Agreement.

On December 21, 2006, the Director of the Ohio EPA revoked the license of Dennis Smalley, the certified professional that had submitted the February 19, 2003 no further action letter, after he was found by the Ohio EPA to have falsified the ground water sampling data in the letter's addenda. On January 26, 2007, the Ohio EPA and Defendants William R. Miller and Superior Fibers entered into a Compliance Schedule Agreement to restore the site to compliance with VAP applicable standards. Limited soil excavation was conducted at the manufacturing facility during July and August 2007 to remove some of the source area shallow soil contamination contributing to TCE ground water contamination.

From March 2006 to February 2011, ground water sampling at the site confirmed ground water contamination. Sampling results confirm that TCE and breakdown compounds, cis-1,2 dichloroethene and vinyl chloride, are the primary contaminants in ground water at the site, and

that, at certain locations, these contaminants have exceeded their respective maximum contaminant levels ("MCL"). The contingent remedy contained in the covenant's operation and maintenance plan was never implemented; however, an amended O & M Plan approved on August 11, 2008 by the Ohio EPA was implemented, but it has not been effective in reducing the contaminant levels or their mobility.

From May 16, 2006 to May 15, 2011, or five years from when the contingent remedy should have been implemented, Superior Fibers failed to show that the manufacturing facility met VAP applicable standards at the property boundary of the manufacturing facility or that ground water contamination was not migrating off-property at or above VAP standards. As a result of this failure, the Director of the Ohio EPA revoked the covenant not to sue by administrative order dated May 16, 2011.

Further ground water sampling at the site in October - November 2012 and October 2013 documented significant increases in cis-1,2-dichloroethene and vinyl chloride concentrations. When compared to sampling results from 2006 through 2010, this confirms that the ground water contaminant plume at the site has expanded and that it is migrating toward existing private and public potable use wells.

The State of Ohio initiated this case on October 9, 2014, and is seeking a preliminary injunction for Defendants to implement an "Interim Action"[3] at the site which will include the

---

[3] The State's proposed "Interim Action" requires Defendants to install ground water monitoring wells at shallow and intermediate depths in the northeast corner of the Village of Bremen's North Wellfield to be sampled quarterly for the following volatile organic compounds: trichloroethene, cis-1,2-dichloroethene, trans-1,2-dichloroethene, 1,1-dichloroethene, and vinyl chloride; to conduct quarterly sampling of the private water system wells and analyze samples for VOCs including the contaminants listed above or install a proximally located monitoring wells on properties owned by Jeffery M. and Celesta A. Schmelzer, 90 Logan-Thornville Road Southeast, Bremen, Ohio, and Jeffery and Pamela Sue Thomas, 520 Logan-Thornville Road Southeast, Bremen, Ohio ("Schmelzer and Thomas Properties").

installation of ground water monitoring wells at varying depths to allow for regular sampling. The State argues that the proposed Interim Action is necessary to prevent further migration of the ground water contamination.

## II.  STANDARD OF REVIEW

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury.  The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature.  In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

> (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir.

---

The Interim Action will require Defendants to establish a trigger level, consisting of any detection above the reporting limit (quantitation limit) for every volatile organic compound noted above. Quantities that exceed the reporting limit and are confirmed by a second round of sampling would trigger an interim action contingency plan.  Defendants would, under those circumstances, be required to submit a plan and schedule to Ohio EPA to provide safe and reliable alternate sources of potable water to the Village of Bremen's public water system, the Schmelzer and Thomas Properties, and/or any other contaminated wells discovered via the Interim Action.
    If trigger levels are exceeded in monitoring wells in the Village of Bremen's public water system, the interim action contingency plan requires the installation of a replacement well or wells to provide a contaminant-free source of potable water.  If installation of a replacement well or wells is not technically or financially feasible, the interim action contingency plan requires Defendants to provide best available treatment technology to the Village of Bremen's public water system to treat the contamination in the public drinking water well or wells.
    If trigger levels are exceeded in the Schmelzer and/or Thomas private water system(s), the interim action contingency plan requires Defendants to connect the contaminated private water system or systems to the Village of Bremen public water system. If connection to the Village of Bremen's public water system is not technically or financially feasible, the interim action contingency plan requires Defendants to provide best available treatment technology to the Schmelzer and/or Thomas private water system(s) to treat the contamination in the private drinking water well or wells.

2004). The factors are not prerequisites; rather, they must be balanced. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004); *see also Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F.Supp.2d 902, 918 (S.D. Ohio 2004) (Sargus, J.). However, Plaintiff asserts that because it is "seeking to enjoin statutory and regulatory violations, it is not bound by the strict requirements of traditional equity as developed in private litigation. Rather, the State need only prove that the conditions set forth by the statute authorizing such relief have been met. *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 55 Ohio St.2d 51 (1978)."

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc*., 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).

### III. DISCUSSION

Plaintiff, the State of Ohio, asserts that it is entitled to injunctive relief based on Defendants violation of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601, *et seq*., and Ohio's surface water and hazardous waste laws under Ohio Revised Code §§ 6111.07(B), 3734.10, 3734.13(C), 3734.20(B), 3767.02-3767.06. Plaintiff asserts that immediate relief is necessary because the ground water contamination is migrating toward the Village of Bremen's public water system,

which draws public water from ground water, and two properties with private drinking water wells.

The Court will consider Plaintiff's claims against the respective Defendants in turn.

**A.     Defendants Reichhold and Superior Fibers**

Plaintiff has notified the Court that it has entered into a proposed settlement agreement with Defendant Reichhold which Reichhold will pay the State of Ohio $75,000 from its bankruptcy estate.  However, no such agreement and/or dismissal entry has been filed with the Court and Reichhold remains a party to this action at the time of the issuance of this Opinion and Order.  Reichhold filed an answer to Plaintiff's Complaint (*see* Doc. 16), however, it has not responded to Plaintiff's Motion for Preliminary Injunction.

Defendant Superior Fibers failed to file a responsive pleading to Plaintiff's Complaint and the Clerk's Entry of Default was entered against it on January 13, 2015.  The actual motion for default judgment has not yet been filed by Plaintiff.  Superior Fibers has failed to respond to Plaintiff's Motion for Preliminary Injunction.  Further, William R. Miller, the statutory agent for Superior Fibers has failed to respond to both Plaintiff's Complaint and Motion.

There is no dispute in this case that Defendants Reichhold and Superior Fibers are the companies who released the TCE and other contaminants during their respective periods of operation of the manufacturing facility, which ultimately led to the contamination of the water supply.  Based on the information submitted by Plaintiff and the lack of any argument to the contrary by Defendants, Plaintiff has established that the aforementioned Defendants have violated the environmental protection statutes at issue in this case.  Therefore, Plaintiff is entitled to the injunctive relief sought against Defendants Reichhold, Superior Fibers and William R.

Miller. It is hereby ordered that Defendants Reichhold, Superior Fibers and William R. Miller must perform the following Interim Action:

    a.    Install two ground water monitoring wells, one at shallow depth and one at intermediate depth, in the northeast corner of the Village of Bremen's Public Water System (PWS) North Wellfield, located on North Broad Street, Bremen, Ohio to be sampled quarterly for volatile organic compounds (VOCs) and analyzed by USEPA Method 524.2 (or other analytical method, subject to approval by Ohio EPA). Contaminants related to the ground water plume that shall be sampled include trichloroethene, cis-1,2-dichloroethene, trans-1,2-dichloroethene, 1,1- dichloroethene, and vinyl chloride.

    b.    Conduct quarterly sampling of the private water system wells and analyze samples for VOCs including the Contaminants listed above or install a proximally located monitoring well on both the Schmelzer Property and the Thomas Property and analyze samples from these wells for VOCs including the Contaminants listed above by the analytical method listed above.

    c.    The trigger-levels shall consist of any detection above the reporting limit (quantitation limit) for every Contaminant listed above, at the village of Bremen's North Wellfield and/or the private water system wells to trigger the implementation of the interim action contingency discussed herein.

    d.    If a ground water sample exceeds the trigger-level for implementation of the interim action contingency, Respondents may either collect a second sample within sixty (60) days of the collection of the initial sample exceeding the trigger-level, to confirm the initial detection, or implement the interim action contingency within ninety (90) days of the initial sample exceeding the trigger-level.

        i.    If a confirmation sample is collected and the trigger-level is confirmed to be exceeded, the interim action contingency must be implemented within ninety (90) days of the date of the collection of the confirmation sample.

        ii.    If a confirmation sample is collected and the trigger-level is not exceeded, the detection is not confirmed and no contingent interim actions shall be needed. The next quarterly ground water sampling shall be collected as previously scheduled.

    e.    Respondents shall facilitate the creation of an account for the shallow and intermediate depth monitoring well ground water sampling results obtained from the village of Bremen's PWS North Wellfield for reporting purposes

    using Ohio EPA's electronic drinking water reports (eDWR).

f. If trigger levels are exceeded in either of the monitoring wells installed in the northeast corner of the village of Bremen's PWS North Wellfield, pursuant to the requirements above, Respondents shall implement the following interim action contingencies within ninety (90) days from the date that any exceedence is identified or confirmed, according to the hierarchy listed below:

  i. Respondents shall submit a plan and schedule to Ohio EPA to provide a safe and reliable alternate source of potable water to the Village of Bremen PWS through the installation of a new well or wells, as needed, at the sole expense of the Respondents to provide sufficient volume of water required to replace the village of Bremen's PWS northern supply wells (Well 1 and Well 2), subject to siting requirements and plan approvals of Ohio EPA, or

  ii. If installation of a replacement well or wells is not technically or financially feasible, Respondents shall provide best available treatment technology to the village of Bremen's PWS to treat all Contaminants that have impacted these drinking water sources as a result of the ground water contaminant plume originating from the Superior property at the sole expense of the Respondents, subject to the requirements of Ohio EPA.

g. If trigger levels are exceeded in the Schmelzer and/or Thomas private water system(s), or proximally located monitoring wells pursuant to the requirements above, Respondents shall implement the following interim actions contingencies within ninety (90) days from the date that any exceedence is identified or confirmed, according to the hierarchy listed below:

  i. Respondents shall submit a plan and schedule to Ohio EPA to provide a safe and reliable alternate source of potable water to the Schmelzer and/or Thomas Properties through the connection of the affected private water system to the village of Bremen's PWS, as needed, at the sole expense of the Respondents to provide sufficient volume of water required to replace the Schmelzer and/or Thomas private water wells, or

  ii. If connection to the village of Bremen's PWS is not technically or financially feasible, Respondents shall provide best available treatment technology to the Schmelzer and Thomas private water systems to treat all Contaminants that have impacted these drinking

        water sources as a result of the ground water contaminant plume originating from the Superior property at the sole expense of the Respondents.

  h.    If additional private water system/potable wells not listed above are identified proximal to the contaminant plume, Respondents shall report the location of these wells to Ohio EPA within fifteen (15) days of discovery and sample those private water system wells and address the protection of potential potable-use receptors as required by paragraphs b., c., d., q., and i of this Interim Action.

  i.    All ground water analytical results from each quarterly sampling event and confirmation sampling event conducted pursuant to the ground water monitoring discussed in herein shall be submitted to Ohio EPA within thirty (30) days of receipt from the laboratory. The certified laboratory ground water analytical results from the ground water monitoring wells in the village of Bremen's PWS North Wellfield shall be reported to Ohio EPA using the eDWR format.

**B.    Defendant Superior Bremen Filtration**

Unlike the aforementioned Defendants, Defendant Superior Bremen Filtration has both answered Plaintiff's Complaint and filed a response in opposition to Plaintiff's Motion for Preliminary Injunction. And, additionally, unlike the other Defendants, Defendant Superior Bremen Filtration has not used and/or disposed of any contaminants contributing to the ground water contamination. Defendant Superior Bremen argues that it is not liable for any remedial work to address the water contamination for the following reasons: it had a reasonable expectation that the covenant not to sue offered it protection; it was qualified as a bona fide prospective purchaser; it has not violated any statute or regulation as alleged by the State; and finally that the remedy requested by the State is now moot in light of the proposed settlement with Defendant Reichhold.

    **1.    Likelihood of success on the merits on the alleged statutory violations**

Plaintiff asserts that an injunction should be issued against all Defendants in this case for

violations of Ohio Revised Code §§ 3734.02(E) and (F), 3734.20(B), 6111.04, and 3767.01 and 3767.13 based on the unpermitted and unauthorized disposal of hazardous waste, the unpermitted discharge of industrial wastes and/or other wastes into ground water, and the creation of a statutory nuisance.  Plaintiff then proceeds to argue that statutory injunctions should be issued if statutory requirements are fulfilled.  However, noticeably absent from Plaintiff's Motion is any evidence or even argument as to how Defendant Superior Bremen has violated the specific statutes in question.  Therefore, at this time, Plaintiff has failed to show a likelihood of success on the merits of its claims against Defendant Superior Bremen and therefore the motion for preliminary injunction as to Defendant Superior Bremen Filtration is denied.

**2.     Irreparable Harm**

The Court is very concerned with Plaintiff's allegations that the water contamination could be spreading to the Village of Bremen, the Village of Rushville, and Fairfield Union High School.  However, at this time, the Interim Action has been ordered against Defendants Reichhold, Superior Fibers and William R. Miller.  Further, Defendant Reichhold has agreed to provide $75,000 to the State of Ohio to implement the Interim Action.  Therefore, Defendant Superior Bremen argues, and this Court agrees, that "[t]he underlying litigation process is now the appropriate forum to determine any further relief the Plaintiff is entitled to (if any) from Superior Bremen."  (Def.'s Response in Opp. at 9).  Defendant Superior Bremen Filtration, however, is required to allow the State of Ohio and its representatives to carry-out the Interim Action at the manufacturing facility.  And if Superior Bremen Filtration can assist the State in any way, it is encouraged to do so.

In summary, the Court finds that Plaintiff has demonstrated a substantial likelihood of

success on the merits of its claims against Defendants Reichhold, Superior Fibers and William R. Miller, and therefore injunctive relief, in the form of the Interim Action, has been granted. However, Plaintiff has failed to establish a substantial likelihood of success on the merits of its claims against Defendant Superior Bremen Filtration.

## V.  CONCLUSION

Based on the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's Motion is granted as to Defendants Reichhold, Superior Fibers and William R. Miller.  Plaintiff's Motion is denied as to Defendant Superior Bremen Filtration.  Defendant Superior Bremen Filtration also filed a Motion for Leave to File a Sur-Reply to which Plaintiff opposed.  In light of foregoing Opinion and Order, Defendant's Motion is **DENIED AS MOOT**.  Those arguments can be raised during the normal course of litigation.

The Clerk shall remove Documents 2 and 38 from the Court's pending motions list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**